

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------

JOAN C. LIPIN,

                              Plaintiff,

               -against-                                    09 Civ. 2422 (RJH)

                                                           **MEMORANDUM OPINION**
DANA A. SAWYER, et al.,                                     **AND ORDER**

                              Defendants.

--------------------------------------------------------------

        This is the eighth action that pro se plaintiff Joan C. Lipin has filed which relates to the

disposition of her late father's estate.  The defendant in this action is Dana A. Sawyer, a third-

party purchaser of real property claimed by the estate.  Because plaintiff did not comply with the

Court's order of August 28, 2008 ("Order") before filing the complaint, the action is dismissed.

In addition, the Court finds that plaintiff acted in contempt of Court by filing this action without

obtaining leave of court, as required by the Order.  To compel future compliance with the

Court's orders, the Court imposes a sanction of $5,000.

## BACKGROUND

        Plaintiff is the daughter of the late Dr. Theodore Lipin.  For several years, she has

unsuccessfully asserted title to certain assets claimed by Dr. Lipin's estate, including an antique

coin collection stored in Denmark and real property located at 302 Hio Ridge Shores South,

Bridgton, Maine (the "Moose Pond Property").  *See Lipin v. Hunt*, 538 F. Supp. 2d 590, 591-92

(S.D.N.Y. 2008) ("*Lipin I*").  Plaintiff's alleged ownership of these assets has been the subject of

litigation in state, federal, and Swedish courts.  The detailed history of the prior litigation is

described in *Lipin I* and *Lipin v. Hunt*, 573 F. Supp. 2d 836 (S.D.N.Y. 2008) ("*Lipin II*").

## A.    Plaintiff's Litigation History

To briefly recap, plaintiff has asserted ownership to the coin collection and Moose Pond Property in at least eight actions. No court has ever found that plaintiff has any rights to the coin collection or the Moose Pond Property.

1. In probate proceedings in Maine, plaintiff sought to admit to probate Dr. Lipin's unsigned 1989 will, every page of which bears the word "VOID" and Dr. Lipin's initials. *See Lipin I*, 538 F. Supp. 2d at 592.

2. In Maine Superior Court, plaintiff filed a complaint asserting seven causes of action against Dr. Lipin's estate, her sister, her brother, her brother's ex-wife, and Evelyn Ellis, the administrator of Dr. Lipin's estate appointed by the Cumberland County Probate Court. Plaintiff's claims were based on her alleged rights to the coin collection and the Moose Pond Property. The Maine court granted summary judgment for defendants and dismissed all the claims, including plaintiff's claims asserting ownership to the coin collection and the Moose Pond Property. *See id.* at 592-93.

3. Plaintiff filed an action in the United States District Court for the District of Maine against Ellis, Ellis's attorney, and Judge Joseph Mazziotti, the Maine judge who presided over the probate of Dr. Lipin's estate. *See Lipin v. Ellis*, No. 07-92-P-S, 2007 WL 2198876, *1 (D.Me. July 26, 2007). The action was dismissed on September 10, 2007. *Lipin v. Ellis*, No. 07-92-P-S, 2007 WL 2701493 (D. Me. Sept. 10, 2007). Dismissing the action, the District Judge warned plaintiff that "additional groundless and vexatious filings with this Court by the Plaintiff will not be tolerated and that filing restrictions may be imposed." *Id.* at *1.

4. Plaintiff filed an action in New York Supreme Court against Ulf Bergquist, the administrator of Dr. Lipin's Swedish estate. Plaintiff alleged, among other things, that Bergquist

participated in the theft and sale of her father's coin collection and conspired with David Hunt, an attorney representing Ms. Ellis, to steal plaintiff's property including the coin collection and the Moose Pond Property. The conspiracy's goal, plaintiff maintained, was to "launder" the properties and extract their value as legal fees. *See Lipin I*, 538 F. Supp. 2d at 593. After the action was removed, this Court dismissed it for lack of personal jurisdiction.

5. Plaintiff filed an action in New York Supreme Court against Danske Bank, a Swedish bank located in Copenhagen, Denmark, which held a safe deposit box containing Dr. Lipin's coin collection. Plaintiff contended among other things that the bank improperly blocked her access to the safe deposit box, falsely imprisoned her, and intentionally inflicted emotional distress on her. *See id.* at 600. This Court dismissed plaintiff's complaint for failure to state a claim upon which relief could be granted. *See id.* at 600-03.

6. Plaintiff sued her siblings, the administrator of her father's estate, Hunt, Bergquist, the law firm representing Hunt and Bergquist, and her mother Kathe Lipin. *See Lipin II*, 573 F. Supp. 2d at 839. Plaintiff asserted claims under the Racketeer Influenced Corrupt Organizations Act ("RICO"), the Economic Espionage Act of 1996, and the Hobbs Act, among other statutes. *Id.* This Court dismissed the complaint for failure to state a claim.

In that case, Hunt and Bergquist moved for sanctions against plaintiff, including attorneys' fees and costs, and an injunction barring plaintiff from filing any related actions without prior approval of the Court. *See id.* at 838. The Court declined to impose monetary sanctions, but found that an anti-suit injunction was necessary and proper. More specifically, the Court found that plaintiff has a well documented history of vexatious litigation, and that she has filed pleadings and motions with an improper purpose. *Id.* at 844-45. Accordingly, the Court enjoined plaintiff from further litigation related to her father's estate. The Order provided:

> Ms. Lipin is enjoined from further litigation of any claims relating to her father's coin collection, the Moose Pond property, actions taken in connection with her father's estate or estate property, or actions taken in connection with legal proceedings involving her father's estate or estate property, without first obtaining leave of this Court, except to submit papers responding to a submission by a defendant, or, when appropriate, to seek appellate review of a decision.

*Id.* at 846. The language of the injunction was not limited to claims asserted in any particular court or jurisdiction.

7. Plaintiff sued a real estate agency, two real estate brokers, and the administrator of her father's estate, apparently for their efforts to sell the Moose Pond Property. (*See* Notice of Removal, *Lipin v. Krainin Real Estate*, No. 08 Civ. 7447 (S.D.N.Y. Aug. 22, 2008).) The Court rejected plaintiff's filings for failure to comply with the anti-suit injunction. Plaintiff's appeal was dismissed by the Court of Appeals because it lacked an arguable basis in law or fact. (Mandate, *Lipin v. Krainan Real Estate*, No. 08-5040-cv (2d Cir. Nov. 14, 2008).)

## B.    The Present Suit

Plaintiff filed this action in the Supreme Court of the State of New York, County of New York, on February 11, 2009, against defendant Sawyer, a third-party purchaser of the Moose Pond Property. Plaintiff named as additional defendants unknown persons who allegedly conspired with Sawyer and Hunt in a "chain conspiracy . . . implemented for the purpose of engaging in larceny, theft, embezzlement, money laundering, mail and wire, fraudulent conversion, fraudulent conveyance, and fraudulent sale, transfer and conveyance of real and personal property" to "destroy the plaintiff financially and psychologically" as well as to "destroy the physical and medical well being of the plaintiff." (Compl. ¶ 3.) Plaintiff alleged that defendants had violated a number of laws, including 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and RICO. (*Id.* ¶ 8.) As relief, plaintiff sought to void all recorded real estate

4

transactions by defendants related to the Moose Pond Property, compensatory and punitive damages for "fraud, deceit, extortion, tortious interference with plaintiff's property interests, defamation and slander, contempt, and invasion of privacy, and severe emotion distress and mental anguish, and the unlawful taking and confiscation of plaintiff's real property without due process of the law," further compensatory damages in the amount of five million dollars for the "permanent physical injuries and the severe and lasting mental anguish and emotional distress which the plaintiff has suffered as a result of the outrageous retaliatory criminal conduct and unlawful conduct maliciously caused by the [defendants] in violation of the Due Process, Equal Protection, and life and liberty rights of the plaintiff that are set forth in the Fourteenth Amendment of the Constitution of the United States," and further "punitive damages in the amount of five million dollars for the hate crime, extortion, and murder threat perpetrated against the plaintiff by defendant." (*Id.* 20-21.)

Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446. On March 26, 2009, the Court entered an order directing plaintiff to submit a written submission explaining why she should not be held in contempt for violating the Court's August 28, 2008 order. On April 25, 2009, plaintiff filed a voluminous response.

## DISCUSSION

### A.    Dismissal

The Order prohibited plaintiff from litigating any claims related to the coin collection or the Moose Pond Property without leave of court. The present action relates to the Moose Pond Property, and plaintiff did not obtain leave of court before proceeding with the action. Therefore, this case is dismissed with prejudice.

## B.   Contempt

A person who violates a court order may be held in civil contempt if three conditions are

satisfied: "(1) the district court must have entered an order that was clear and unambiguous,

(2) it must be shown by clear and convincing evidence that the alleged contemnor failed to

comply with the order, and (3) the alleged contemnor must have failed to introduce credible

evidence of a present inability to comply." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10

(2d Cir. 1995); *accord Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558

F.3d 159, 164 (2d Cir. 2009); *Paramedics Electromedicina Commercial, Ltda v. GE Med. Sys.*

*Information Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).  Having afforded plaintiff an

opportunity to address whether she should be held in contempt, the Court finds that all three

conditions are satisfied in this case.

First, the August 2008 order was clear and unambiguous.  A clear and unambiguous order

is one that leaves "no uncertainty in the minds of those to whom it is addressed." *Hess v. New*

*Jersey Transit Rail Operations, Inc.*, 846 F.2d 114, 116 (2d Cir. 1988).  Thus, the person to

whom the order is addressed "must be able to ascertain from the four corners of the order

precisely what acts are forbidden." *Drywall Tapers, Local 1974 v. Local 530, Operative*

*Plasterers Int'l Ass'n*, 889 F.2d 389, 395 (2d Cir. 1989), *cert. denied*, 494 U.S. 1030 (1990).

The Order says that litigation relating to expressly enumerated claims, i.e., claims relating to Dr.

Hunt's coin collection, the Moose Pond property, or actions taken in connection with Dr. Lipin's

estate or estate property "is strictly prohibited without leave of this Court." *Lipin II*, 573

F. Supp. at 846.  The Order is clear and unambiguous on its face.

Second, plaintiff failed to comply with the Order.  As noted, this Court never received a

proposed complaint before plaintiff filed this action.

6

Third, plaintiff has not presented any evidence of a present inability to comply.  When a court has raised the possibility that a plaintiff is in contempt, it is the plaintiff's burden "to establish his inability clearly, plainly, and unmistakably." *United States v. Chusid*, 372 F.3d 113, 117 (2d Cir. 2004) (citing *Huber*, 51 F.3d at 10).  Plaintiff has not done so here.

The Court turns, then, to the question of an appropriate sanction.  To the extent that a contempt sanction is coercive and designed to ensure compliance with the court's orders, a court has "broad discretion to design a remedy that will bring about compliance." *Paramedics,* 369 F.3d at 567.  A district court should consider several factors before imposing a sanction, including "the character and magnitude of the harm threatened by continued contumacy," the "probable effectiveness of any suggested sanction in bringing about compliance," and "the contemnor's ability to pay." *Id.* at 657-68 (internal quotations marks and alterations in original omitted).

Here the "character and magnitude of the harm threatened by continued contumacy" is that plaintiff will continue to file frivolous and vexatious lawsuits against persons unfortunate enough to have a connection to Dr. Lipin's estate.  These lawsuits, which may appear comical (if not tragic) to an outside observer, impose significant costs on defendants.  Each action requires the expenditure of attorneys' fees and other costs.  More difficult to quantify, but equally real, are the opportunity costs of responding to plaintiff's baseless suits, and the aggravation of being on guard against frivolous filings.  All these costs are well illustrated by an April 2008 decision of the Cumberland County Probate Court, which ordered plaintiff to pay over $380,000 in legal fees. *See Lipin II*, 573 F. Supp. 2d at 839 (internal citations omitted).

As for the "probable effectiveness of any suggested sanction in bringing about compliance," the Court concluded in August 2008 that "Ms. Lipin's abusive conduct will be

7

completely deterred by injunctive relief." *Lipin I*, 573 F. Supp. 2d at 846. It is now clear that

that conclusion was erroneous. As this action illustrates, a mere injunctive order is inadequate to

enjoin plaintiff from frivolous litigation; more severe sanctions are necessary.

As for the last factor, plaintiff has submitted no evidence concerning her ability to pay.

As an alleged contemnor bears burden of producing evidence of inability to comply, *Huber*, 51

F.3d at 10, this factor does not weigh one way or the other in the Court's analysis.

After considering each of the above factors and the broader history of plaintiff's litigation

conduct, the Court imposes a sanction of $5,000 on plaintiff, payable to the Clerk of the Court.

In the event that plaintiff continues to file claims related to the Moose Pond Property or the coin

collection without first obtaining leave of court, increased sanctions will be imposed.

## C.     Plaintiff's Arguments

Plaintiff makes three arguments why the Court should not dismiss this action or hold her

in contempt. None has merit.

First, plaintiff contends that this Court lacks jurisdiction to hear this case. 28 U.S.C.

§ 1441 provides that a defendant may remove any civil action brought in a state court to the

federal district court for the district embracing the place where such action is pending as long as

the federal district court has original jurisdiction over the case. In this action, removal is valid

because the Court has original jurisdiction via two paths.

First, the Court has federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff's

complaint asserts claims based on the defendants' alleged violations of, among others, 42 U.S.C.

§§ 1981, 1983, 1985, 1986, 1988, 18 U.S.C. §§ 1961 *et seq.*, and 18 U.S.C. § 1951. (Compl.

¶ 8.) The Court has original jurisdiction over "all civil actions arising under the Constitution,

laws, or treaties of the United States." 28 U.S.C. § 1331 (2006).

Second, the Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff's complaint asserts that plaintiff is a resident of New York and that defendant Sawyer is a resident of New Hampshire. (Compl. ¶¶ 1, 2.) Plaintiff claims damages of $10 million, well over the jurisdictional threshold of $75,000. (*Id.* 22.) The Court has original jurisdiction over this case under 28 U.S.C. § 1332.

Plaintiff contends that defendant's notice of removal had no effect because it was not filed within thirty days of the date on which she filed her action. Under 28 U.S.C. § 1446(b), "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading . . . or within thirty days after the service of summons upon the defendant . . . ." Although plaintiff has not provided this Court with proof of service, both parties agree that Sawyer was personally served with a copy of plaintiff's complaint on February 16, 2009. (Def.'s Notice of Removal ¶ 3; Pl.'s Mot. Remand ¶ 1.a.) Defendant's Notice of Removal was filed with the U.S. District Court for the Southern District of New York twenty-nine days later, on March 17, 2009. The removal was proper.

Plaintiff also contends that this Court lacks jurisdiction to address the contempt issue because the Order is on appeal in the Court of Appeals. This argument fails for two reasons. First, the Court of Appeals dismissed plaintiff's appeals because they "lack[ed] an arguable basis in law or fact." (Mandate, *Lipin v. Krainan Real Estate, et al.*, No. 08-5040-cv (2d Cir. Nov. 14, 2008) (internal citations omitted).) Second, even if there was a pending appeal, there is an "established doctrine that persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980); *accord United States v. United Mine Workers of America*, 330 U.S.

258, 293 (1947) ("[W]e find impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.").

Lastly, plaintiff contends that the Anti-Injunction Act, 28 U.S.C. § 2283, prevents this Court from enjoining her from filing claims within the scope of the August 2008 injunction in state court.[1]  This argument also fails.  First, the removal statute is an express exception to the Act.  As the Fifth Circuit has explained, "once a case is removed, the state court no longer enjoys concurrent jurisdiction over the dispute." *Matter of Meyerland Co.*, 910 F.2d 1257, 1263 (5th Cir. 1990).  Thus, "[t]he anti-injunction act . . . does not bar an injunction of a state court proceeding which purports to exercise jurisdiction over a removed case." *Id.*; *accord Allstate Ins. Co. v. Preston*, 842 F. Supp. 1441, 1445 (S.D.Fla. 1992).

In any event, the Act authorizes the Court "to protect or effectuate its judgments"—here, the August 2008 order prohibiting plaintiff from further litigation of claims related to her father's estate without leave of Court. *Cf. Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) ("Although the Anti-Injunction Act is an absolute bar to any federal court action that has the effect of staying a pending state court proceeding unless the action falls within a designated exception, it does not preclude injunctions against a lawyer's filing of *prospective* state court actions."); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1524-25 (9th Cir. 1983) (upholding injunction preventing future litigation in federal court where plaintiff's litigation style "include[d] rekindling his litigation in a new action just as it is extinguished, or about to be extinguished, in an earlier action"); *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980) (ruling that district court has the power under All Writs Act, 28 U.S.C. § 1651(a),

---

[1] The Act provides in full: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

10

to enjoin litigants who are abusing the court system by harassing their opponents); *see generally* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2942, at 63-64 (2d ed. 1995). This authority operates directly on plaintiff, and plaintiff is subject to this Court's continuing jurisdiction whether or not the actions she files have an independent basis for federal jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court finds that plaintiff acted in contempt of the Court's August 2008 order in filing this action. The action is dismissed, and plaintiff is directed to pay a fine of $5,000 to the Clerk of the Court. Plaintiff is cautioned that further litigation in violation of the August 2008 injunction will result in the imposition of increased penalties. The Clerk is directed to close this case.

SO ORDERED.

Dated: New York, New York
      August **7** , 2009

Richard J. Holwell
United States District Judge

11